George Starke, J.
Are blood banks and a hospital liable for breach of warranty and "strictly in tort” when the blood, furnished by the blood banks to the hospital and administered to the patient, is alleged to have been contaminated? This is the sole issue sub judice, the parties having stipulated the withdrawal of collateral procedural matters.
Plaintiff while hospitalized was in need of blood transfusions. The blood was supplied by the three defendant blood banks and administered by the defendant hospital. It is claimed that hepatitis resulted, and this action followed. Three identical causes of action are alleged against each defendant. One in negligence, another for breach of warranty and the third in strict liability in tort.
All defendants move for summary judgment to dismiss the causes of action for breach of warranty and strict tort liability. The actions in negligence are not before this court.
Defendants contend that by judicial decree (Perlmutter v Beth David Hosp., 308 NY 100) and legislative fiat (Public Health Law, § 580, subd 4) no action will lie against them for breach of warranty and strict tort liability.
Plaintiff urges that Perlmutter having been decided in 1954 is no longer viable, and if it has vitality, it is applicable to hospitals and not blood banks; and contends that the pertinent provision of the Public Health Law having been enacted in May, 1971 is inapplicable to the plaintiff who had the transfusions in March, 1970 with hepatitis following in April, 1970 (this action was instituted in December, 1971); and if it be applicable it would only affect the breach of warranty action and not the strict tort liability claim.
In Perlmutter (supra, p 103), the hospitalized plaintiff claimed to have sustained injuries from the transfusions of "bad” blood and sued the hospital for breach of warranty in that the blood used was not "reasonably fit for [the] purpose” and was not of "merchantable quality” (Personal Property Law, § 96, subds 1, 2, now Uniform Commercial Code, §§ 2-314, 2-315). The court, per Judge Fuld, held that a hospital is dedicated to the care and healing of the sick and makes available its facilities and equipment developed through medical science and the essence of the relationship between the hospital and patient is one where "service predominates” and not the concept of a sale. "If, however, the court were to stamp as a sale the supplying of blood * * * it would mean that the hospital, no matter how careful, no matter that the *3 disease-producing potential in the blood could not possibly be discovered, would be held responsible, virtually as an insurer, if anything were to happen to the patient as a result of 'bad’ blood” (p 106). The court then added that (p 107) "the art of healing frequently calls for a balancing of risks and dangers to a patient. Consequently, if injury results from the course adopted, where no negligence or fault is present, liability should not be imposed upon the institution or agency actually seeking to save or otherwise assist the patient”.
Perlmutter alludes to the fact that blood banks are also immune from liability for breach of warranty when the court held as quoted above that (p 107) "liability should not be imposed upon the * * * agency actually seeking to * * * assist the patient”. In light of Perlmutter, the Appellate Division in Krom v Sharp & Dome (7 AD2d 761), confirmed that the blood bank was not liable for breach of warranty to the plaintiff afflicted with hepatitis from blood plasma furnished by the defendant blood bank, containing jaundice viruses.
In Perlmutter and Krom the court enunciated the policy of this State which remained a judicially pronounced policy from 1958 until 1971. In 1971, the Legislature codified in subdivision 4 of section 580 of the Public Health Law as a legislative mandated policy that: "The collection, processing, storage * * * or use of blood or a blood derivative for the purpose of diagnosis, prevention or treatment of disease or the assessment of medical condition is hereby declared to be a public health service and shall not be construed to be, and is declared not to be, a sale of such blood or blood derivative, for any purpose or purposes whatsoever.”
-The conclusion then is evident that the furnishing of blood by the blood banks and the hospital is an adjunct to the services performed by the hospital in an endeavor to restore a patient’s health and, therefore, it is not a sale. The actions for breach of warranty against each of the defendants is not maintainable.
As for the causes of action bottomed on strict liability in tort: the doctrine of strict tort liability found its genesis in Blessington v McCrory Stores Corp. (305 NY 140), when our courts resuscitated a barred time-limitation action if in negligence but viable contractually for breach of warranty. When this evolution clashed with the doctrine of privity, as in Greenberg v Lorenz (9 NY2d 195), and Randy Knitwear v *4 American Cyanamid Co. (11 NY2d 5), the court in Goldberg v Kollsman Instrument Corp. (12 NY2d 432), faced with a choice whether to create a new action in tort labeled as "strict tort liability” or to extend the concept of implied warranty by eliminating the requirement of privity, opted for the proposition that notwithstanding the absence of privity, a cause of action which exists in favor of third-party strangers to a contract is nonetheless an action for breach of implied warranty. This dichotomy was resolved in Mendel v Pittsburgh Plate Glass Co. (25 NY2d 340, 345) with this pronouncement "that strict liability in tort and implied warranty in the absence of privity are merely different ways of describing the very same cause of action”. In Codling v Paglia (32 NY2d 330), the doctrine of strict products liability to an innocent bystander without proof of negligence became firmly established.
In view, however, of the Public Health Law, which in subdivision 2 of section 571 defines a blood bank as "a facility for the collection, processing or storage of human blood or blood derivatives, or from which or by means of which human blood or blood derivatives are distributed or otherwise made available”; and subdivision 4 of section 580, which mandates that "the collection, processing, storage [and] distribution * * * of blood * * * is hereby declared to be a public health service and shall not be construed to be, and is declared not to be, a sale,” it is apparent that the erosion of the citadel of privity resulting in a doctrine of strict products liability aimed primarily at the manufacturer of the product in favor of the user and nonuser thereof cannot be stretched to encompass blood banks under the guise of strict tort liability.
It would be presumptuous* for a court at nisi prius to enunciate the emergence of a new cause of action labeled as strict tort liability in an area where public policy is directly to the contrary from Perlmutter to the Public Health Law. So long as medical science has not discovered a means of detecting the presence of the jaundice-producing agent in a donor’s blood nor a practical method of treating the blood to be used for transfusions so that the danger might be eliminated, absent negligence or fault, hospitals and blood banks may not be held responsible virtually as insurers. As so aptly observed by Judge Fuld in Perlmutter (308 NY 100, 107, supra): "when one enters a hospital as a patient; he goes there, not to buy medicines or pills, not to purchase bandages or iodine or serum or blood, but to obtain a course of treatment in the hope of being cured of what ails him.”
*5 In view of the foregoing determination, the court does not reach the issue posed by the blood banks of the efficacy of their disclaimer of warranties.
Consequently, the causes of action against the defendants predicated on strict tort liability must also be dismissed. Hence, defendants’ motions to dismiss the breach of warranty and strict tort liability are granted.