**FREDERIC P. WIEDERSUM ASSOCI-ATES, Plaintiff-Appellee,**

v.

**NATIONAL HOMES CONSTRUCTION CORPORATION, Defendant-Appellant.**

**No. 957, Docket 76–7021.**

United States Court of Appeals, Second Circuit.

Argued May 21, 1976.

Decided August 12, 1976.

---

Harry L. Simmons, New York City (Milbank, Tweed, Hadley & McCloy, Russell E. Brooks and Charles D. Bethill, New York City, on the brief), for defendant-appellant.

Thomas C. Morrison, New York City (Rogers & Wells and William H. Mulligan, Jr., New York City, on the brief), for plaintiff-appellee.

Before LUMBARD, ANDERSON and OAKES, Circuit Judges.

ROBERT P. ANDERSON, Circuit Judge:

In January of 1973, the United States Navy announced that it was inviting proposals for the construction of a 200-family housing project at the Naval Weapons Station in Charleston, South Carolina. The architectural firm of Frederic P. Wiedersum Associates (Wiedersum) received a copy of the Navy's notice and wrote to National Homes Construction Company (National), a general contracting firm, expressing its interest in submitting a proposal with the latter firm for the construction of the Navy project. National replied, on January 29, 1973, that it "look[ed] forward to the opportunity of submitting a proposal along with Frederic P. Wiedersum Associates on this Project." The present action arises out of the failure of National to submit a bid, which Wiedersum said National was obligated to do under their contractual relationship. It alleged that National's breach of this obligation damaged Wiedersum in the amount of $250,000. The case was tried before a jury, which found that Wiedersum had been damaged in the amount of $150,000 and judgment was entered in this sum in favor of Wiedersum. National has appealed. For the reasons stated below, we reverse and remand for a new trial.

The parties' mutual interest in the South Carolina project represented the latest of several joint attempts to obtain construction contracts, none of which had been successful. Wiedersum alleged in the present action that the parties had agreed to apply the terms of a 1971 contract to their work on the South Carolina project. National denies this, but concedes that the procedures followed for the South Carolina project resembled those followed in their earlier joint attempts. These basically involved, in sequence, the preparation of preliminary site plans by Wiedersum; joint review of those plans by both parties; the subsequent preparation of final plans by Wiedersum; the procurement by National of bids from potential subcontractors and suppliers; National's calculation of an overall bid price on the project; and submission of the proposal. It was understood that Wiedersum would receive its fee only if the bid was accepted; otherwise each party would bear its own costs.

Evidence presented at the trial indicated that the parties did in fact collaborate to a substantial extent. In its complaint, Wiedersum alleged that it sent National the final plans "[o]n or about April 4, 1973"; however, at trial Wiedersum showed that it had sent *two* sets of "final plans": one set was sent on March 30, and the other, which allegedly varied from the first only in minor and immaterial detail, was sent on April 5, 1973. Both sets of plans became crucial factors in the case, because, in addition to asserting that it was in no event contractually bound to submit a bid to the Navy, National claimed that Wiedersum had failed to provide final plans *in time* to make submission of a bid feasible, and that the plans were *inadequate* to meet the Navy's criteria for the South Carolina project.

In the pre-trial stages of this litigation, National took the position that, as of April 2, 1973, it had received *no* plans, other than preliminary site plans. At the trial, however, it admitted that it had in fact received the March 30 plans. Thus, its claim on the issue of timeliness resolved itself essentially into a contention that the March 30 plans were not "final" because they differed from the plans of April 5. The district court, however, restricted National's efforts to point out these differences on the ground that this evidence went to the issue of the sufficiency or suitability of the plans for submission to the Navy, an issue which the court had previously ruled had not been pleaded by National and was therefore precluded from the litigation. The district court also refused to allow National to introduce into evidence Wiedersum's complaint which referred only to April 4 as the date on which final plans were sent. On appeal, National challenges as erroneous each of these rulings. It also attacks, *inter alia,* the court's instructions to the jury in

several respects, as well as the court's refusal to inform counsel prior to summation what its rulings were on the parties' requests to charge. Finally, National contends that there was no factual basis for the amount of damages awarded by the jury.

■ In arguing that the evidence relating to the adequacy *vel non* of its plans was properly excluded, Wiedersum characterized the issue as one of failure of consideration, which Rule 8(c) of the Federal Rules of Civil Procedure requires to be pleaded specially as an affirmative defense. National had not so pleaded, nor had it mentioned inadequacy of the plans in its answer to Wiedersum's interrogatory concerning National's reasons for not submitting a bid to the Navy. National contends, however, that proof of the plans' conformity to the Navy's requirements was an element of Wiedersum's affirmative case, because it went to show whether the latter was actually damaged by National's failure to bid on the project.

It is true that under the terms of the alleged contract, Wiedersum would not be compensated for its work unless the bid was successful and presumably the Navy would not have accepted the plans if they failed to conform to its requirements. It is clear from the record, however, that Wiedersum was not attempting to recover damages on the theory that a bid based on its plans would have been successful if submitted by National—or at least Wiedersum's evidence was entirely insufficient to support a recovery under such a theory. National, therefore, did not suffer prejudice because of the district court's ruling on this point.

■ Whether or not that ruling was correct, National further contends that the district court misapplied it in excluding evidence as to the differences between the March 30 and the April 5 plans. We agree. Wiedersum conceded that National had to receive the final plans at least six to eight days before the April 6 bid deadline, and it does not suggest that plans sent on April 5 were timely. Wiedersum's right to recover in this action therefore depended on whether or not the March 30 plans were "final" for purposes of enabling National to develop a firm price for its bid. National sought to show, through the testimony of its former employee, John Gleason, that those plans could not have been final because they differed significantly from the April 5 plans and because those differences affected the cost of constructing the project. As both sets of plans, as well as testimony that any differences between them were minor, were introduced into evidence by Wiedersum, it had no cause to complain of Gleason's testimony on this issue. See *Bradford Audio Corporation v. Pious,* 392 F.2d 67, 73 (2 Cir. 1968), and authorities cited therein. The district court erred in sustaining Wiedersum's objections to that testimony.

■ It was also error for the court to withhold the complaint, or at least the relevant portions thereof, from the jury. The complaint alleged that the final plans were sent to National on or about April 4, 1973, but at the trial, the plaintiff sought to show that the plans it sent on March 30 were final plans. Clearly the former admission was relevant to the issue of whether Wiedersum had timely provided National with final plans, and National was entitled to have the admission submitted to the jury. McCormick on Evidence § 265 (2d ed.); *Kunglig Jarnvagsstyrelsen v. Dexter & Carpenter, Inc.,* 32 F.2d 195 (2 Cir.), *cert. denied,* 280 U.S. 579, 50 S.Ct. 32, 74 L.Ed. 629 (1929).

■ At the close of the evidence plaintiff's counsel filed eight requests to charge and defendant's counsel filed fourteen. Thereafter and before the arguments of counsel began, defendant's counsel requested the court to inform the parties of the instructions it intended to give the jury, but the court refused to do so, saying, "I've never done that. It works out very well. Wait till the end." As counsel pointed out below, F.R.Civ.P. 51 requires the court to "inform counsel of its proposed action upon the requests [to charge] prior to their arguments to the jury . . . ." The reason for this rule is well illustrated by the results

of the court's failure to follow it in the present case. Remaining in ignorance of the court's rulings on the parties requests to charge, counsel were hindered in their ability to present summations which fully dealt with the issues to be placed before the jury. See *Hetzel v. Jewel Companies, Inc.,* 457 F.2d 527, 535 (7 Cir. 1972). In particular, National had argued to the court that the theory of "promissory estoppel" could not be used as an alternative basis for the plaintiff's recovery and did not refer to that theory in its summation; yet the court subsequently gave an instruction concerning promissory estoppel. Also, although during the trial the court had rejected National's contention that the adequacy of Wiedersum's plans was an issue in the case, in consequence of which National avoided discussion of the issue during summation, the court nevertheless instructed the jury that Wiedersum had to show that its plans conformed to the Navy's requirements for the South Carolina project.[1]

Had the court followed Rule 51 an even more serious problem could also have been avoided. On a number of issues, the district court gave totally contradictory and inconsistent instructions. The jury was charged, on the one hand, that an agreement between the parties could be shown by "conduct of the defendant [which] reasonably led plaintiff to believe that defendant would submit a bid"; that the adequacy of plaintiff's drawings was not an issue in the case; and that damages should be measured by the reasonable value of plaintiff's services in preparing the plans. On the other hand, the jury was also charged that defendant's expectation that a bid would be submitted was not sufficient to show the existence of an agreement, which required an intentional promise or agreement by defendant; that if the final plans did not meet the Navy's requirements the verdict must be for the defendant; that only such costs and expenses as plaintiff actually incurred could be recovered as damages; and that no damages at all could be recovered if the parties had understood that the right to receive payment depended on the success of the bid. It appears that the court simply failed, in several instances, to winnow out the requests to charge which it intended to adopt from those it intended to reject. Indeed, in part the court's instructions took the form of "Defendant contends that . . ." or "Plaintiff contends that . . . ." After this was called to its attention by counsel, the court attempted to straighten out the confusion by telling the jury, "All of the statements that I have read on the part of the plaintiff and defendant are instructions of the Court," which fixed the contradictions and confusion in immutable stone.

It is true, as Wiedersum notes, that National did not object to all of the inconsistent instructions, and that ordinarily failure to object precludes a party from attacking the jury charge on appeal. F.R. Civ.P. 51. "Such failure on the part of an appellant, however, is not an absolute bar to an appellate court's consideration of [reversible] error . . . ." *Ferrara v. Sheraton McAlpin Corporation,* 311 F.2d 294, 297 (2 Cir. 1962). This court has recognized that consideration of alleged errors in a jury charge may be appropriate even absent objection where "necessary to correct a fundamental error or to prevent a miscarriage of justice." *Cohen v. Franchard Corporation,* 478 F.2d 115, 124 (2 Cir. 1973). Certainly it is "fundamental" error to give instructions which are hopelessly confusing and which fail "to provide even the barest legal guideposts to aid the jury in rationally reaching a decision." *McNello v. John B. Kelly, Inc.,* 283 F.2d 96, 102 (2 Cir. 1960). See also *Johnson v. Erie Railroad Company,* 236 F.2d 352 (2 Cir. 1956).

Because the foregoing errors require that a new trial be ordered in this case, it is unnecessary for this court to consider the additional points raised by National on appeal. At the second trial the parties will have an opportunity to present to the district court their contentions on such sub-

---

1. The district court *also,* however, instructed the jury that "the adequacy of plaintiff's draw- ings is not an issue in this case." See *infra,* this opinion.

stantive issues as promissory estoppel and the proper measure of damages. We find it appropriate to direct that the case be assigned on retrial to a different district judge.

Reversed and remanded with directions for a new trial.