John SAMUELS et al.,
Plaintiffs-Appellants,

v.

The HEALTH AND HOSPITALS CORPORATION OF the CITY OF NEW YORK and Eastern Blood Bank, Inc., Doe 1, Doe 2, Doe 3, Doe 4, Doe 5, Doe 6, Doe 7, Defendants-Appellees.

No. 226, Docket 78–7195.

United States Court of Appeals, Second Circuit.

Argued Nov. 22, 1978.

Decided Jan. 22, 1979.

Eleanor Jackson Piel, New York City, for plaintiffs-appellants.

Michael Edmund Pressman, New York City, Levy, Bivona & Cohen, New York City, for defendant-appellee Eastern Blood Bank, Inc.

Allen G. Schwartz, Corp. Counsel, New York City (L. Kevin Sheridan, New York City, of counsel), for defendant-appellee Health and Hospitals Corporation of the City of New York.

Before MULLIGAN and GURFEIN, Circuit Judges and WEINSTEIN, District Judge (of the United States District Court for the Eastern District of New York, sitting by designation).

WEINSTEIN, District Judge:

Enid Samuels died of hepatitis. Her survivors claim the cause was infected blood received during surgery at a New York City Health and Hospitals Corporation Hospital. In this diversity action, they seek recovery against Eastern Blood Bank, a commercial blood bank which allegedly supplied the defective blood, and against the Hospital. Notwithstanding a jury verdict against both defendants, the trial court granted judgment for defendants or, alternatively, a new trial. For the reasons indicated below, a new trial is required.

## I

New York denies recipients of blood the benefits of its general warranty and strict liability rules. New York Public Health Law § 580(4). In order to recover—whether from a hospital or a blood bank—a plaintiff must prove negligence. *See, e. g., Perlmutter v. Beth David Hospital*, 308 N.Y. 100, 123 N.E.2d 792 (1954) (hospital); *Davidson v. Hillcrest General Hospital*, 40 A.D.2d 693, 336 N.Y.S.2d 296 (App.Div.2d Dep't 1972) (hospital); *Jennings v. Roosevelt Hospital*, 83 Misc.2d 1, 372 N.Y.S.2d 277 (S.Ct.N.Y.Co.1975) (hospital and blood bank).

The district court properly rejected plaintiffs' argument that the Federal Food, Drug and Cosmetic Act, 21 U.S.C. § 331(b), which permits injunctive proceedings, criminal penalties, and seizure of adulterated blood in interstate commerce, in some manner preempts operation of New York's substantive liability rule. The federal statute is not "so pervasive as to make reasonable the inference that Congress left no room for the State to supplement it;" nor is "the federal interest" "so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject;" "the state policy" does not "produce a result inconsistent with the objective of the federal statute." *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 229–31, 67 S.Ct. 1146, 1152, 91 L.Ed. 4447 (1947); *see also Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 83 S.Ct. 1210, 10 L.Ed.2d 248 (1963).

## II

Depending upon evaluation of the credibility of the various fact and expert witnesses, and of the rational inferences that might be drawn from their testimony and from the written exhibits, the jury—a body of reasonable persons with diverse backgrounds—might reach a number of conclusions.

### A.

It seems clear that Ms. Samuels received two blood transfusions while in the Hospital: one of whole blood, and one of packed blood cells (made by expressing most of the plasma from whole blood). The jury could have found a high probability that death resulted from hepatitis caused by injection of one of these two units of blood into her body.

The whole blood admittedly was supplied by Eastern. Eastern had purchased this blood from a donor in Cincinnati, Ohio. From the evidence, the jury might reasonably conclude that this blood was drawn from its donor without sufficient precaution having been taken by Eastern against hepatitis. For example, there was evidence that no inquiry had been made with respect to whether the donor had been tattooed—a factor which would increase the likelihood of hepatitis—and there were indications on the blood donor's card from which it might have been concluded that an excessive number of drawings had been made from him. Standards applicable in New York for blood bank operations—among them, one requiring that a physician be present to examine or supervise others in the examination of donors—were not followed by Eastern; a reasonable jury could certainly take these standards into account

in determining what would constitute "reasonable care" on the part of a blood bank regularly supplying the New York market. In addition, there was evidence that Eastern had conducted operations in New Jersey under conditions which so grossly departed from acceptable standards that its state license was in the process of being revoked when it abandoned operations there; and one of Eastern's employees testified at trial in a way that a reasonable juror could construe to mean that Eastern's mode of operation in Cincinnati was not appreciably different from that in New Jersey. There was no evidence that the donor of the whole blood had ever been tested to determine whether there were signs of his ever having had hepatitis; this omission was apparently due to the fact that after the action was begun the Hospital requested testing of the wrong donor.

The evidence with respect to the unit of packed blood cells is somewhat more ambiguous. There is no direct evidence of the source of the blood from which it was obtained. But the jury might reasonably infer that a unit of whole blood—also obtained from Eastern—set aside for Ms. Samuels had been returned from the operating room to the Hospital's blood processing office, where it was converted to packed cells and then administered to her. With regard to this unit of blood, there was evidence that its donor had recently been tested for hepatitis, and showed no signs of ever having had the disease. But the jury had before it evidence that such testing is not conclusive, and, as in the case of the whole blood infused in Ms. Samuels, it was in a position to reasonably infer that this second unit of processed blood had been negligently obtained. Given this and other evidence a jury might well conclude that Eastern was the source of negligently obtained blood that caused Ms. Samuels' death.

■ With regard to the Hospital, the evidence indicated that it had made no inquiry about Eastern's background or the conditions under which it obtained blood from donors. Apparently, it was not even aware that there had been widespread publicity with respect to proceedings instituted by New Jersey authorities that had resulted in the closing of Eastern's New Jersey blood bank. From the evidence before it, the jury might reasonably conclude that the Hospital was negligent in not using requisite precautions in checking its blood supply. Under these circumstances, a jury verdict against both defendants could stand.

### B.

■ Another alternative open to a reasonable jury is that neither of the defendants was negligent. This is probably the conclusion that would have been reached by almost all judges on this record. But it is the jury, not a judge, which has the responsibility for decision. The federal jury has wide power to draw inferences based upon the general knowledge of its members and the evidence produced at trial. *See, e. g., Rogers v. Missouri Pacific R. R.,* 352 U.S. 500, 504–05, 509–10, 77 S.Ct. 443, 447–48, 450–51, 1 L.Ed.2d 493 (1957), *rehearing denied,* 353 U.S. 943, 77 S.Ct. 808, 1 L.Ed.2d 764 (1957); *Burns, Administratrix v. Penn Central Company,* 519 F.2d 512 (2d Cir. 1975); *Phipps v. N. V. Nederlandsche Amerikaansche S. M.,* 259 F.2d 143 (9th Cir. 1958). *See also* Cooper, *Directions for Directed Verdicts: A Compass for Federal Courts,* 55 Minn.L.Rev. 903, 972, 985 (1971); Bagalay, *Directed Verdicts and the Right to Trial By Jury In Federal Courts,* 42 Tex.L. Rev. 1053, 1060, 1063 (1964). And in ruling on a motion for judgment notwithstanding the verdict, "[t]he trial court must view the evidence and all inferences most favorably to the party against whom the motion is made. The reviewing court must do the same . . . . " *O'Connor v. Pennsylvania Railroad Co.,* 308 F.2d 911, 914 (2d Cir. 1962) (citations omitted). *See also Bevevino v. Saydjari,* 574 F.2d 676 (2d Cir. 1978); *Noonan v. Midland Capital Corp.,* 453 F.2d 459, 461 (2d Cir. 1972).

### III

■ An additional reason supports the district court's alternative ruling granting

defendants' motion for a new trial. *See* Fed.R.Civ.P. 50(c). During the argument before this court, the attorney for Eastern indicated that until the trial began it had not been clear which of four possible donors had supplied the blood admin⁚ ᵑ to Ms. Samuels. As a result, all part ⸜re at a disadvantage in investigating and preparing for trial. The jury may not only have been deprived of the best available evidence, but it may have been confused by what was introduced.

There is, therefore, a substantial question as to whether there has been a "just . . . determination of [this] action." Fed.R. Civ.P. 1. Under these circumstances a new trial is appropriate. *See, e. g., Geller v. New England Industries, Inc.,* 535 F.2d 1381, 1382–86 (2d Cir. 1976) (judgment n. o. v. reversed; new trial in interest of justice partially due to confusion of parties); *Proctor & Gamble Defense Corp. v. Bean,* 146 F.2d 598, 601 (5th Cir. 1945) (new trial; "evident confusion" as to pleadings and admissions); *Mercer v. New York Trap Rock Corp.,* 91 F.Supp. 434, 438 (E.D.N.Y.1950) (new trial; "death case and the plaintiff was obviously at a disadvantage in the preparation of her case"). *Cf. Ferrell v. Trailmobile, Inc.,* 223 F.2d 697 (5th Cir. 1955) (ends of justice may, in some circumstances, require new trial even though proper diligence not used to secure vital evidence for use at trial).

Like trial courts, an appellate court has the authority to grant a new trial in the interest of justice. *See* 28 U.S.C. § 2106; *Geller v. New England Industries, Inc.,* 535 F.2d 1381 (2d Cir. 1976).

The judgment notwithstanding the verdict is reversed. The case is remanded for a new trial.