**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

CATHERINE L. HOY, Guardian for
Kevin A. Brown,
<u>Plaintiff-Appellant,</u>

v.

STEVE A. SIMPSON, Sheriff of
Loudoun County; DANIEL DONDERO;

No. 97-1583

TRULA PEACH; LANCE SCHUL; JAMES
DRUMMOND; SHANNON M. DALY; THE
LOUDOUN COUNTY BOARD  OF
SUPERVISORS; MICHAEL COX; JACK
BRADLEY; JEFFREY FRAGALA;
UNKNOWN SHERIFF'S DEPUTIES,
<u>Defendants-Appellees.</u>

CATHERINE L. HOY, Guardian for
Kevin A. Brown,
<u>Plaintiff-Appellant,</u>

v.

STEVE A. SIMPSON, Sheriff of
Loudoun County; DANIEL DONDERO;

No. 98-2605

TRULA PEACH; LANCE SCHUL; JAMES
DRUMMOND; SHANNON M. DALY; THE
LOUDOUN COUNTY BOARD  OF
SUPERVISORS; MICHAEL COX; JACK
BRADLEY; JEFFREY FRAGALA;
UNKNOWN SHERIFF'S DEPUTIES,
<u>Defendants-Appellees.</u>

Appeals from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Leonie M. Brinkema, District Judge.
(CA-96-726-A)

Argued: April 9, 1999

Decided: June 25, 1999

Before LUTTIG and WILLIAMS, Circuit Judges,
and BUTZNER, Senior Circuit Judge.

_____

Affirmed in part, vacated in part, and remanded by unpublished per
curiam opinion.

_____

**COUNSEL**

**ARGUED:** James Paul Campbell, JAMES P. CAMPBELL & ASSO-
CIATES, Leesburg, Virginia, for Appellant. David Drake Hudgins,
HUDGINS, CARTER & COLEMAN, Alexandria, Virginia, for
Appellees. **ON BRIEF:** William J. Rold, New York, New York, for
Appellant. Paul T. Emerick, Jeffrey R. Dion, HUDGINS, CARTER
& COLEMAN, Alexandria, Virginia, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Catherine L. Hoy brought this federal civil rights action, with pen-
dent state law tort claims, against Loudoun County, the Sheriff of

2

Loudoun County, and seven sheriff's deputies after her son Kevin Brown suffered injuries while being detained at the Loudoun County jail that left him in a persistent vegetative state. Hoy appeals the district court's dismissal of her claims against the County and the Sheriff, and its entry of judgment, after a jury trial, in favor of the sheriff's deputies.

I.

On the evening of Friday, March 22, 1996, thirty-three year old Kevin Brown was arrested by police from the Town of Leesburg and jailed at the Loudoun County Adult Detention Center ("Loudoun County ADC" or "ADC") on a charge of public drunkenness. Brown was well-known to officials at the ADC, having been held fourteen times before on such charges. Brown was scheduled to be released at 8:00 a.m the next morning, but his release was delayed until the afternoon as a result of his continued intoxication.

At approximately 6:30 a.m. on Sunday, March 24, the morning after his release, Brown entered a 7-11 convenience store in Leesburg. Brown was obviously intoxicated -- he was loud and verbally abusive and was having trouble maintaining his balance. While in the store, he began to vomit. A Leesburg police officer arrived on the scene and again took Brown into custody on charges of public drunkenness. The officer transported Brown to the Loudoun County ADC, where a magistrate signed a commitment card and ordered that Brown be released by 6:00 p.m. that evening, provided he was sober.

Brown was booked at 8:00 a.m. and placed in a holding cell, where he remained for the next twenty-two hours. Brown's exact condition at the time of his booking and throughout this period was a matter of some dispute at trial, but there is no doubt that he was highly intoxicated and spent most, if not all, of that time either asleep or unconscious. Sheriff's deputies at the ADC checked on Brown regularly throughout the day and night of March 24 and the early morning of March 25, and tried a number of times, unsuccessfully, to awaken him.

At approximately 5:25 a.m. on March 25, near the end of his shift, sheriff's deputy Bradley, who had failed in two attempts to rouse

Brown during the night, stopped by to check on him. Bradley testified at trial that at this time he noticed that Brown was having difficulty breathing, which was a change from his condition as Bradley had observed it during the night. Bradley took immediate steps to aid Brown and summon medical assistance. Shift commander Sergeant Shannon Daly responded from less than ten yards away, and the two men observed Brown vomiting or spitting what appeared to be clear fluid, including some blood and mucus. Daly summoned a rescue squad, which responded at approximately 5:35 a.m. The rescue squad gave Brown oxygen and placed him on an EKG monitor, and administered an anti-narcotic drug and another drug to raise his blood sugar. Brown was transported to Loudoun Hospital Center at 5:52 a.m., and arrived at 5:55 a.m. Over the next few hours and days, Brown experienced significant seizure activity and cerebral swelling, and was ultimately diagnosed as having slipped into a persistent vegetative state.

Catherine Hoy, Brown's mother and guardian, brought this action in the United States District Court for the Eastern District of Virginia against Loudoun County, by its Board of Supervisors, Loudoun County Sheriff Steve Simpson, and seven sheriff's deputies, seeking damages and injunctive relief under 42 U.S.C. § 1983, on the grounds that Brown's due process rights had been violated, and damages under state law for both simple and gross negligence. The district court denied defendants' motion to dismiss and permitted the parties to proceed with extensive discovery. On cross-motions for summary judgment at the close of discovery, the district court granted summary judgment to the defendants on Counts III and IV (of seven) of the complaint alleging the liability of the County and the Sheriff for failure properly to train the deputies and to adopt procedures for the care of intoxicated detainees, and for the failure to provide an adequate facility. Sheriff Simpson remained a party to the action under a respondeat superior theory on the state law negligence and gross negligence counts (Counts VI and VII). Hoy's cross-motion for summary judgment was denied, and she voluntarily dismissed Count V of her complaint alleging the deputies' use of excessive force.

The case went to trial before a jury on the remaining four counts alleging denial of medical treatment, deliberate indifference to medical needs, negligence, and gross negligence. The trial lasted five days, during which the jury heard testimony from dozens of witnesses. At

4

the close of Hoy's case, the Sheriff and his deputies moved for judgment as matter of law pursuant to Fed. R. Civ. P. 50. Pursuant to that motion, the district court dismissed Count VII, the simple negligence claim, because under Virginia law the County's sovereign immunity from suit extended to the Sheriff and his deputies for negligent performance of their discretionary governmental functions. Following the presentation of their case, the defendants renewed their Rule 50 motion, which the district court denied in full. Three counts were thus submitted to the jury: Counts I and II of the section 1983 action, alleging "Denial of Medical Treatment" and "Deliberate Indifference to Medical Needs," respectively, and Count VI, the state law gross negligence claim. After deliberating for less than three hours, the jury returned a unanimous verdict in favor of the defendants on all three counts. The court then denied plaintiff's motion for a new trial.

While plaintiff's appeal of the jury verdict and the summary judgment was pending, she filed a motion with this court under Fed. R. Civ. P. 60(b) to amend the record and present argument related to "newly discovered evidence." We held the appeal in abeyance and remanded the case to the district court for a determination on the merits of that motion, in which Hoy alleged that defendants had withheld certain information pertaining to the Sheriff's compliance with Virginia Department of Corrections Standards in operating the ADC, and to the involvement of the Loudoun County Board of Supervisors in supervising the facility. Plaintiff argued that this evidence warranted vacating the district court's award of summary judgment to the Sheriff and the County on Count III of the First Amended Complaint alleging a failure by the Sheriff to train deputies and adopt proper policies for monitoring intoxicated detainees. The district court agreed, ruling that evidence of the Sheriff's failure to comply with Department of Corrections standards, of notice of deficiencies in training or procedures, and of policymaking activity by the Board of Supervisors, could have created genuine issues of material fact that would have made the grant of summary judgment improper. The court vacated its summary judgment order and re-opened discovery for a period of forty-five days on the limited issues identified by Hoy in her motion.

After taking sixteen depositions and filing a number of additional discovery motions, Hoy filed a Second Amended Complaint alleging in four new counts that Sheriff Simpson and the Loudoun County

5

Board of Supervisors were deliberately indifferent specifically by failing to train deputies to perform a proper medical screening and to insure that the deputies' first-aid re-certifications were up to date, and by allowing newly appointed deputies to be assigned for work in the ADC. The complaint also included two new counts alleging liability for simple and gross negligence as a result of these training and supervisory deficiencies. Defendants moved to dismiss the Second Amended Complaint under Fed. R. Civ. P. 12(b)(6), and the district court granted the motion on the stated ground that plaintiff had failed to plead sufficient facts to establish a claim of deliberate indifference. Plaintiff now appeals the dismissal of her Second Amended Complaint as well as the earlier judgment entered on the jury verdict.

II.

We consider first appellant's challenges to the judgment entered on the jury verdict in favor of the defendant sheriff's deputies. Appellant argues that the court erred by failing specifically to instruct the jurors that the state-of-mind required to support a finding of deliberate indifference could be established by circumstantial evidence and by giving a qualified immunity instruction that "hopelessly confused" them. Appellant also contends that she was prejudiced by the district court's failure to comply with the requirement of Fed. R. Civ. P. 51 that it advise the parties before closing argument of its proposed action on their requested instructions. Finding no reversible error, we affirm the jury verdict in favor of the sheriff's deputies.

A.

Appellant claims first that she is entitled to a new trial because the district court's instructions on "deliberate indifference" were inadequate in light of the Supreme Court's decision in Farmer v. Brennan, 511 U.S. 825 (1994), defining that term for the purposes of establishing a constitutional violation.[1] In Farmer, the Supreme Court sought

_____

[1] Although Farmer v. Brennan considered the "deliberate indifference" standard in the context of a prisoner's claim of a violation of the Eighth Amendment's prohibition against cruel and unusual punishment, this court has previously held that the same standard applies to due process

6

to clarify the deliberate indifference standard it had announced nearly twenty years earlier in Estelle v. Gamble, 429 U.S. 97 (1976). Explicitly rejecting the "invitation to adopt an objective test for deliberate indifference" along the lines of "civil-law recklessness," the Court adopted instead a subjective standard focusing on the defendant's conscious disregard of a substantial risk of harm. Farmer, 511 U.S. at 836-37. Thus, the Court held that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 838.

Appellant does not argue that the district court erred in instructing the jury on this actual knowledge requirement. Rather, she contends that the court erred by neglecting to explain to the jury, consistent with the Court's admonition in Farmer, that the question whether the official had the requisite knowledge "is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that a risk was obvious." Id. at 842 (internal quotations and citation omitted).

We find that the district court did not abuse its discretion in denying appellant's requested jury instructions on deliberate indifference, because the court's instructions "adequately informed the jury of the controlling legal principles without misleading or confusing the jury to the prejudice of the [appellant]." Spell v. McDaniel, 824 F.2d 1380, 1395 (4th Cir. 1987). First, although the district court did not give the specific instruction that appellant requested, it did give a standard general instruction on the value of circumstantial evidence in establishing any contested fact. J.A. at 2828-29.

Second, with respect to the specific deliberate indifference charge given, the district court began by essentially quoting to the jury the Farmer standard:

_____

claims brought by pre-trial detainees like Brown. Gordon v. Kidd, 971 F.2d 1087, 1094 (4th Cir. 1992). In any event, plaintiff has not challenged the applicability of the deliberate indifference standard to either of the section 1983 counts of her complaint, in the district court or on appeal. Rather, she contends only that the district court did not properly instruct the jury as to the application of that standard.

7

> [T]he plaintiff has the burden of showing that the defendant
> . . . had both been aware of facts from which the inference
> could be drawn that a substantial risk of serious harm
> existed and that the individual deputy sheriff also must have
> drawn such an inference.

J.A. at 2841. The district court did not stop there, however. It went on to explain that the jury

> would have to determine . . . from <u>all the facts and circumstances of the case</u> whether or not any one or all or a group of these deputies had that kind of subjective awareness of the known serious medical needs of Mr. Brown in order . . . to find that the deliberate indifference standard has been met.

J.A. at 2842 (emphasis added). Finally, the court went so far as to instruct that

> deliberate indifference may be demonstrated by either actual intent or reckless disregard. A person acts recklessly by disregarding a substantial risk of danger that is either known to the person or which would be <u>apparent to a reasonable person in that position</u>.

J.A. at 2842 (emphasis added). Thus, the district court made clear that the jury in determining a defendant's state-of-mind should consider all of the facts and circumstances, including the obviousness of the risk. Accordingly, we are satisfied that the district court's instruction adequately informed the jury of the essential principles of the deliberate indifference standard.

B.

Next, appellant argues that the district court erred by giving the following qualified immunity instruction, which was a variation of one defendants had requested:

> Now a defendant in the position of a deputy sheriff is entitled to a qualified immunity only if he did not know what

8

he did was in violation of federal law and if a competent public official would not have been expected at the time to know that the conduct was in violation of federal law. In deciding what a competent official would have known about the legality of the defendant's conduct, you may consider the nature of the defendant's official duties, the character of his official position, the information which was known to the defendant or not known to him, and the events which confronted him.

You must ask yourself what a reasonable official in defendant's situation would have believed about the legality of the defendant's conduct. You should not, however, consider that, what the defendant's subjective intent was, even if you believe it was to harm the plaintiff. You may also use your common sense. If you find that a reasonable official in defendant's situation would believe his conduct to be lawful, then this element will be satisfied.

J.A. at 2846-47 (emphases added).

Appellant argues that this instruction constituted reversible error because its prohibition of any inquiry into subjective intent was "hopelessly confusing" when considered in conjunction with the deliberate indifference charge requiring the jurors to consider each defendant's state-of-mind. In addition, appellant contends, the question whether a defendant is entitled to qualified immunity is always a question of law and thus should never be submitted to the jury. See, e.g., Warlick v. Cross, 969 F.2d 303, 305 (7th Cir. 1992).

Although we find nothing inherently confusing about two separate instructions that accurately convey that an alleged constitutional violation requires an inquiry into the defendant's subjective awareness while a defense to liability for that violation does not, appellant's related contention -- that qualified immunity should never be left to the jury -- is less easily dismissed. For the instructions given in this case would seem to allow the jury to find that an individual defendant was in fact deliberately indifferent to Brown's serious medical needs, but that he was immune from liability because a reasonable officer would not know that such indifference constituted a violation of fed-

9

eral law. Appellant's argument, and it is not without support, is that this latter conclusion would rest on a determination that it was not "clearly established," in the particularized sense that our caselaw requires, see DiMeglio v. Haines, 45 F.3d 790, 804 (4th Cir. 1995), that deliberate indifference to an intoxicated pre-trial detainee's medical need would violate that detainee's constitutional rights to due process. This determination, appellant contends, is for the court to make. See, e.g., Warren v. Dwyer, 906 F.2d 70, 75 (2nd Cir. 1990) ("The ultimate legal determination whether, on the facts found, a reasonable police officer should have known he acted unlawfully is a question of law better left for the court to decide.").

We need not decide whether allowing the jury to make this determination was error, however, because the jury's clear verdict that the defendants were not deliberately indifferent precluded any consideration of the qualified immunity question, and thus any error in giving the instruction was harmless. See Stone v. Peacock, 968 F.2d 1163, 1166 (11th Cir. 1992) ("Even if a court improperly instructs the jury on qualified immunity, however, the error does not require reversal if it can be determined that the jury decided the case on the merits and not on qualified immunity.").

The district court, in consultation with the parties, prepared verdict forms that expressly and unambiguously asked the jurors to state their finding whether each defendant had violated Kevin Brown's constitutional rights. Thus, the jury received individual verdict forms for each defendant that read as follows:

> We, the Jury, unanimously find that the plaintiff, Catherine L. Hoy, guardian for Kevin A. Brown, has proven by a preponderance of the evidence that [the defendant] violated the civil rights of Kevin Brown by denying him medical treatment for a known serious medical need.

> We, the Jury, unanimously find that the plaintiff, Catherine L. Hoy, guardian for Kevin A. Brown, has proven by a preponderance of the evidence that [the defendant] violated the civil rights of Kevin Brown by being deliberately indifferent to a known serious medical need.

10

> We, the Jury, unanimously find that the plaintiff, Catherine
> L. Hoy, guardian for Kevin A. Brown, has proven by a pre-
> ponderance of the evidence that [the defendant] was grossly
> negligent in her handling of Kevin Brown.

The jury answered each question with respect to each defendant by checking the box marked "No." Further, after the verdicts were read, the jury was polled at plaintiff's counsel's request, and each juror without hesitation confirmed that these were his verdicts as to each individual defendant. These verdicts clearly demonstrate that the jurors were persuaded by the defense the sheriff's deputies put on -- a defense which emphasized <u>not</u> the deputies' assertion of qualified immunity from suit (which as best we can tell was never mentioned by either party), but rather, as the district court noted at a post-trial hearing, "the deliberate indifference concept . .. and an argument about whether or not the catastrophic injuries to Mr. Hoy were, in fact, a result of all of this long sleep or a result of the status epilectus related to the significant alcohol history that he had." J.A. at 2879.**2** Because the jury concluded that there was no deliberate indifference, and thus had no cause to consider the subsequent question of whether the defendants were entitled to qualified immunity, the district court's instruction on that defense, even if given in error, was harmless. <u>Cf</u>. <u>Harwood</u> v. <u>Partredereit AF 15.5.81</u>, 944 F.2d 1187, 1192-3 (4th Cir. 1991) ("When a jury is instructed on two theories of liability, one which is proper and the other which is not, the court must remand the case for a new trial unless it is reasonably certain that the jury's verdict was not influenced by the erroneously-submitted. . . theor[y]." (citation and internal quotations omitted) (alteration in original)).

If any confirmation were needed of the jury's determination that defendants were not deliberately indifferent to Brown's serious medical needs, it can be found in the jury's equally unequivocal resolution

_____

**2** In returning in less than three hours with unanimous verdicts indicating its wholesale acceptance of this defense, the jury demonstrated a view of the evidence presented at trial that was obviously shared by Judge Brinkema, who told counsel that plaintiff had presented "a weak case," and that the court had given plaintiff the "benefit of the doubt" by not granting defendant's motion for judgment as a matter of law at the end of plaintiff's case. J.A. at 2871.

of the state law gross negligence claim, as to which no immunity defense was either applicable or given. In sending the gross negligence claim to the jury, the court gave the following instruction:

> [N]egligence is the failure to use ordinary care. Ordinary care is care a reasonable person would have used under the circumstances of this case.
>
> Gross negligence is a higher degree of negligence, and you must remember that throughout your deliberations. Gross negligence is that degree of negligence which shows such <u>indifference</u> to others as constitutes an utter disregard of caution, amounting to a complete neglect of the safety of another person. It is such negligence as would shock fair-minded people, although it is <u>something less than willful recklessness</u>.

J.A. at 2848 (emphases added). In contrast, in charging the jury on deliberate indifference, the district court set a higher standard for liability, emphasizing that the section 1983 claims required either a showing that the individual defendants acted with <u>subjective awareness</u> of a serious medical need, defined as one that "is so obvious that a layperson would easily recognize the necessity for a doctor's attention," J.A. at 2842, or with willful recklessness:

> Mere negligence is not enough . . . . Another way of thinking about deliberate indifference to a serious medical need is when the treatment is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental unfairness. Deliberate indifference may be demonstrated by either actual intent or reckless disregard . . . . An act is reckless if done in <u>conscious</u> disregard of its known probable consequences.

J.A. 2842-44 (emphasis added).

This latter instruction tracked <u>Farmer</u>, in which the Supreme Court emphasized that liability under a section 1983 deliberate indifference claim required at the very least a finding of exactly this type of <u>willful</u>

12

recklessness, akin to the concept of recklessness commonly applied in the criminal law context. Farmer, 511 U.S. at 837. In doing so, the Court explicitly declined to adopt as the Eighth Amendment standard the model of "civil-law recklessness" reflected in the district court's "gross negligence" instruction. See id.[3]

Thus, the jurors, in rejecting appellant's state law claim of gross negligence, found that she had not demonstrated even the civil law recklessness that the Supreme Court held in Farmer was insufficient to support a constitutional claim of deliberate indifference. It is no surprise, then, that the jury also found that the defendants were not deliberately indifferent to Brown's serious medical needs under a standard that required a finding not only of a substantial risk of serious harm, but also that the defendants had actual knowledge of that risk and consciously disregarded it.[4]

Accordingly, we are satisfied that the jury's verdicts rested, as their verdict forms unambiguously state, on a finding that no constitutional violation had occurred, and that any error in giving the qualified immunity instruction was therefore harmless.

_____

[3] Indeed, the Supreme Court noted that the very term "gross negligence" was generally synonymous with the civil law recklessness that the Court held could not support a finding of a constitutional deprivation. Farmer, 511 at 836 n.4.

[4] Alternatively, the jury may have found that the defendants were grossly negligent, but that their gross negligence was not a proximate cause of Mr. Brown's injuries. J.A. at 2847. Indeed, defense counsel argued persuasively in his closing arguments that"Kevin Brown's medical emergency had nothing to do with his handling at the jail," J.A. at 2790, and that the plaintiff had not proven that"Brown would be any better off today if the deputies had acted differently." J.A. at 2791. A jury finding that the plaintiff had failed to establish proximate cause for purposes of the gross negligence claim would necessarily serve to defeat plaintiff's constitutional claims as well. See J.A. at 2844 (jury instructions) ("Now the third element in a civil rights action is proximate cause. And by the way, proximate cause also runs through the state cause of action for gross negligence, so this will help you on both of those.").

13

C.

Finally, appellant argues that she is entitled to a new trial because the district court failed to comply with the requirement of Fed. R. Civ. P. 51 that it inform the parties before closing arguments of its proposed actions on their requested instructions.[5] According to appellant, her counsel was "blind-sided" by the court's instructions, and thus unable properly to object to the court's assertedly erroneous deliberate indifference and qualified immunity charges. Although we agree with appellant that the district court erred in failing to inform the parties with some degree of specificity before closing argument which instructions it intended to give, we again do not believe that appellant has demonstrated prejudice entitling her to a new trial.

The district court informed counsel, several days before closing arguments, of its intention

> to rely on Devitt and Blackmar on the standard jury instruction in terms of the civil rights statute. I'm going to use my standard instructions, which are a humanized version of Devitt and Blackmar.

J.A. at 2651. While appellees may be correct that Rule 51 does not require the court to provide counsel with the exact words it intends to use in instructing the jury, see, e.g., Dunn v. St. Louis-San Francisco Ry. Co., 370 F.2d 681, 683 (10th Cir. 1967) ("The court may inform counsel in general terms suitable to this purpose, and need not . . . do so in a sentence-by-sentence outline."), it is also undoubtedly true that the rule does require, at the very least, that the court make

---

[5] Rule 51 provides as follows:

> At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. The court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury . . . . No party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection.

14

clear in advance <u>which</u> instructions in substance it intends to give. <u>See</u>, <u>e.g.</u>, <u>Jones</u> v. <u>Southern Pacific R.R.</u>, 962 F.2d 447, 451 (1st Cir. 1992) ("It is enough that counsel be apprised of the <u>substance</u> of the instructions." (emphasis added)). To hold otherwise would undermine the manifest purpose of the provision, which courts have identified as "promot[ing] intelligent advocacy by opposing counsel," and allowing counsel to "pattern their closing arguments on the points of law that will be explained to the jury in the final charge." <u>Estate of Stuart Lutren</u> v. <u>Chesapeake and Ohio Railroad</u>, 592 F.2d 941, 945 (6th Cir. 1979); <u>see Wiedersum Assocs.</u> v. <u>National Homes Constr. Corp.</u>, 540 F.2d 62, 66 (2nd Cir. 1976). Where, as here, the defendants have requested a qualified immunity instruction, a vague statement that the court intends to "rely on Devitt and Blackmar on the standard jury instruction in terms of the civil rights statute" cannot adequately serve this purpose, as the statement gives no indication at all whether the court intends to give some variant of that particular requested instruction (which, according to the treatise to which the court referred, is to be given in "relatively rare and limited" circumstances).

Nonetheless, "noncompliance with [Rule 51] does not warrant a new trial unless material prejudice is shown to exist." <u>Hardigg</u> v. <u>Inglett</u>, 250 F.2d 895, 897 (4th Cir. 1957). Given the provision's purpose, material prejudice from the court's failure to comply with Rule 51's notice requirement is generally established by a showing that the error "hinder[ed] [counsel] in their ability to present summations which fully dealt with the issues to be placed before the jury." <u>Wiedersum Assocs.</u>, 540 F.2d at 66. However, appellant does not argue before this court that her counsel's closing argument was adversely affected by the court's failure to comply with the rule. Rather, she contends only that counsel was prejudiced in his ability properly to object to the instructions that were actually given. Because we have determined, <u>see infra</u>, that any error in the instructions was harmless, we must also conclude, <u>a fortiori</u>, that appellant was not materially prejudiced by her counsel's asserted inability properly to object to those instructions.**6**  Accordingly, because appellant

_____

**6** In light of the district court's deviation from the terms of the rule, we have, in an abundance of caution, reviewed appellant's specific claims of instructional error despite her counsel's arguable failure to preserve these

15

has not even suggested that her counsel's summation suffered as a result of the court's non-compliance with Rule 51 and because the instructions in question did not themselves constitute reversible error, we do not find the material prejudice that would entitle appellant to a new trial.**7**

For these reasons, we affirm the judgment that the sheriff's deputies did not violate Brown's constitutional rights.

III.

Hoy also appeals the district court's dismissal of the federal civil rights claims in her Second Amended Complaint alleging that the Sheriff and the County violated Brown's constitutional rights by failing properly to train the deputies or to provide adequate procedures for the screening and care of intoxicated detainees. The district court dismissed the complaint on the specific ground that plaintiff had not "adequately ple[d] sufficient facts to sustain a case involving deliberate indifference to the degree that a constitutional violation occurred,"

_____

exceptions with the degree of specificity the rule also requires. See, e.g., Jerlyn Yacht Sales, Inc., 950 F.2d 60, 66 (1st Cir. 1991) ("[S]imply referring by number to a request filed prior to the charge is not sufficient to preserve an objection to the court's failure to give the requested instruction."). We have done so out of recognition that an additional consequence of the court's refusal to advise the parties in advance of its proposed action on their requested instructions was to leave plaintiff's counsel scrambling at the last moment to determine which of the parties' instructions the court actually gave, and in what form, so that counsel could properly frame and preserve her objections before the jury retired. **7** We note that the district court, in defending its "practice" of refusing to advise counsel any more specifically of its intentions with respect to requested instructions, commented that this practice had "not yet been addressed or criticized by the Court of Appeals." J.A. at 2899. The fact that we find no reversible error in this case should not be confused with an absence of "criticism" of a practice that we believe falls considerably short of the mandatory requirements of the Federal Rules of Civil Procedure and which, in some future case, will inevitably result in exactly the material prejudice to one or another party that the rule was designed to prevent.

16

and that "principles of qualified immunity as well as the concepts of sovereign immunity" dictated this result. We affirm the dismissal of the federal civil rights claims, but do so on different grounds than those relied upon, or alluded to, by the district court. Rather, we affirm the dismissal of these claims because the jury's finding that the sheriff's deputies inflicted no constitutional injury on Brown removed any basis for liability of the County or the Sheriff under section 1983.

Municipal governments cannot be held liable under section 1983 on the basis of respondeat superior. See Monell v. New York City Dep't of Social Servs., 436 U.S. 658, 694 (1978). Rather, in order to establish municipal liability, a plaintiff must show the existence of a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation." Canton v. City of Harris, 489 U.S. 378, 384 (1989). Where the claim against the municipality is that its failure, or the failure of its policymakers, to provide proper training resulted in the alleged constitutional deprivation, liability will lie only where the "city's failure to train reflects deliberate indifference to the constitutional rights of its inhabitants." Id . at 392.

The district court, in granting the motion to dismiss, focused only on the question whether appellant had sufficiently pled this necessary causal link. That is, the district court dismissed the claims after concluding that appellant had not alleged facts that could establish that the county's failure to train the sheriff's deputies reflected "deliberate indifference" to the constitutional rights of its inhabitants. Id. at 392. While we are dubious that such a determination could legitimately be made as a matter of law from the four corners of the complaint, we nonetheless affirm the judgment of dismissal. In light of the jury verdict, herein affirmed, that none of the individual sheriff's deputies was deliberately indifferent to Brown's serious medical needs, and thus that he suffered no constitutional deprivation, there simply is no basis for municipal liability even if appellant could establish that the county was deliberately indifferent under Canton v. Harris. See City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986) (per curiam) ("[N]either Monell v. New York City Dept. of Social Services . . . nor any other of our cases authorizes the award of damages against a municipal corporation based on the actions of one of its officers when in fact the jury has concluded that the officer inflicted no constitutional harm."); Giancola v. State of West Virginia Dept. of Pub.

17

Safety, 830 F.2d 547, 550 (4th Cir. 1987) ("If the officers' actions were in compliance with constitutional standards, there is no liability on the part of . . . the employing entities."); Hinton v. City of Elwood, Kan., 997 F.2d 774, 782 (10th Cir. 1993) ("A municipality may not be held liable where there was no underlying constitutional violation by any of its officers."). Accordingly, we affirm dismissal of the section 1983 claims against Loudoun County and the Sheriff.

IV.

Finally, while we readily affirm the dismissal of the pendent state law negligence and gross negligence claims against the County on sovereign immunity grounds, see Mann v. County Board, 199 Va. 169 (1957), we cannot do so, at least without further explanation, with respect to those same claims brought against the Sheriff in his individual capacity. Neither the district court in its order from the bench nor appellees in their briefs on appeal has attempted to explain why these state law claims against the Sheriff should not survive the motion to dismiss under Virginia tort law. Accordingly, we vacate the dismissal of the pendent state law claims against Sheriff Simpson and remand for consideration of their proper disposition.

CONCLUSION

For the reasons stated herein, we affirm in part and vacate in part the judgment of the district court, and remand for further proceedings.

AFFIRMED IN PART, VACATED IN PART, AND REMANDED

18